IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Daniel Edward Cvijanovich, | ) | |
| | ) | |
| Petitioner, | ) | **ORDER GRANTING MOTION** |
| | ) | **TO VACATE, SET ASIDE,** |
| vs. | ) | **OR CORRECT SENTENCE** |
| | ) | **UNDER 28 U.S.C. § 2255** |
| United States of America, | ) | |
| | ) | Criminal No. 3:07-cr-55 |
| Respondent. | ) | |

Before the Court is Defendant Daniel Edward Cvijanovich's (hereafter "Cvijanovich") pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. #149). Cvijanovich filed a brief in support of his motion (Doc. #150). Cvijanovich contends that the United States failed to disclose a letter from its witness Kyle White (hereafter "White") wherein White obstructed justice by attempting to suborn perjured testimony in his own criminal case. Cvijanovich also asserts that the United States failed to disclose an obstruction of justice sentencing enhancement White received based on the suborning letter. In response to Cvijanovich's motion, the Court directed the United States to brief three issues:

> (1) Whether the United States possessed impeachment evidence pertaining to Kyle White;
> (2) Whether the United States failed to disclose that information to Defendant; and
> (3) Whether the evidence was material in this case.

(Doc. #161). The United States responded (Doc. #163). Defendant replied (Doc. #165).

**SUMMARY OF DECISION**

Cvijanovich was convicted by a jury on one count of making threats against the President to his fellow inmate, Kyle White. White was being prosecuted in this District on an unrelated charge and as a result both White and Cvijanovich were incarcerated at the same facility. Before his own

trial, White wrote a letter to his cousin that establishes he was willing to lie to avoid prison in his own criminal case, he was not reluctant to obstruct justice by suborning perjury, and he was aware of the seriousness of creating a perjured defense. Another prosecutor in the same office used White's letter against him and was aware of the obstruction of justice sentencing enhancement. Even though the prosecuting attorney in Cvijanovich's case was unaware of this information, the information was clearly in the possession of the United States. The information was not disclosed and Cvijanovich did not discover it until after trial. White's letter was not readily available to defense counsel, and the obstruction of justice enhancement was only explained in White's Presentence Investigation Report which was not part of the publicly available court file. Cvijanovich did not have equal access to the information and clearly he was not in a position of parity with the government. White's letter and the obstruction of justice sentencing enhancement are different than other impeachment information used at trial and are not merely cumulative. White was the only direct witness to the charge Cvijanovich was convicted on and this information creates a reasonable probability the outcome of the proceeding would have been different. Consequently, the Court finds that the United States suppressed this information in violation of the Brady doctrine and Cvijanovich's motion to vacate his conviction is granted.

## PROCEDURAL BACKGROUND

Cvijanovich was originally indicted on three counts of Threats Against the President in violation of 18 U.S.C. § 871 (Doc. #6). On October 17, 2010, a jury convicted Cvijanovich on the first count of the Indictment, concerning a threat allegedly made to his pod-mate Kyle White (Doc. #73). The jury acquitted on the remaining two counts involving threats allegedly transmitted to other inmates (Id.). Cvijanovich moved for acquittal (Doc. #78) and a new trial (Doc. #79), challenging the sufficiency of the evidence and credibility of the testimony of Kyle White. The

Court denied both motions (Doc. #81). On January 3, 2008, this Court sentenced Cvijanovich to a term of imprisonment of 19 months with 36 months of supervised release (Doc. #86). Cvijanovich appealed to the Court of Appeals for the Eighth Circuit (Doc. #87). The Court of Appeals affirmed the conviction (Doc. #120). Cvijanovich moved for a new trial based on a letter White wrote to the Court wherein White stated that he did not use drugs (Doc. #121). Cvijanovich claimed the statement was a known lie (Id.). This Court denied Cvijanovich's motion finding the evidence that White lied about being a drug user was not material and not likely to lead to a different result if a new trial was granted (Doc. #124). Cvijanovich now moves to vacate his conviction under 28 U.S.C. § 2255 (Doc. #149).

## FACTUAL BACKGROUND

In <u>United States v. Kyle Christopher White</u>, District of North Dakota Case No. 2:06-cr-00080, White was charged with assaulting his child resulting in a serious bodily injury. In a misguided attempt to extricate himself from the predicament in which he found himself, White wrote a letter asking his cousin Derrick, who was also incarcerated at the Fort Totten jail, to tell White's attorney or investigators that he was wrestling with the child when the child fell off the bed causing his injury (Doc. #150-1). In the letter White writes, "But remember one thing <u>I didn't tell you too [sic] say this</u>, or <u>I didn't talk to you about this at all okay</u>, or else if they catch me telling you too [sic] do this I'm really in trouble" (Id.) (emphasis in original). The letter includes a postscript which appears to read, "Flush this letter when your [sic] done reading it" (Id.).

The United States relied upon White's letter to Derrick at a reconsideration of detention hearing and at his sentencing. The Court found that White obstructed justice for a two level sentencing enhancement pursuant to USSG § 3C1.1. The United States did not disclose White's letter or the obstruction of justice information to Cvijanovich's defense counsel. In March 2010,

3

as a result of his own investigation Cvijanovich discovered White's letter attached as an exhibit to a clerk's minute entry for the reconsideration of detention hearing and that White had received an upward adjustment for obstruction of justice at sentencing.

## DISCUSSION

Cvijanovich asserts that the United States suppressed evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). "Under Brady, the government must disclose any evidence both 'favorable to an accused' and 'material to guilt or to punishment.'" United States v. Whitehill, 532 F.3d 746, 753 (8th Cir. 2008). The United States Supreme Court has also determined that the government has an affirmative duty to "disclose matters that affect the credibility of prosecution witnesses." United States v. Morton, 412 F.3d 901, 906 (8th Cir. 2005) (citing Giglio v. United States, 405 U.S. 150 (1972)). The failure to disclose Giglio evidence requires a new trial if the withheld information is deemed "material." United States v. Garcia, 562 F.3d 947, 952 n.7 (8th Cir. 2009) (citing United States v. Spinelli, 551 F.3d 159, 164 (2nd Cir. 2008)). The materiality standard under either Brady or Giglio requires the defendant to show "that there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceedings would have been different.' A reasonable probability of a different result is shown when the government's failure to disclose 'undermines confidence in the outcome of the trial.'" Id. At 953 (quoting Spinelli, 551 F.3d at 164-65). Whether the government had a duty to disclose the suppressed information under Brady or Giglio is immaterial, as the requirements for establishing a violation under either theory appear to be similar and the remedy is the same.

To establish a Brady violation, the defendant "must demonstrate that the government suppressed evidence, that the evidence was exculpatory, and that the evidence was material either to guilt or punishment." United States v. Ryan, 153 F.3d 708, 711 (citation omitted). Impeachment

4

evidence, as well as exculpatory evidence, falls within the Brady rule, and it is subjected to the same materiality analysis. United States v. Duke, 50 F.3d 571, 577 (8th Cir. 1995). Here, the United States concedes that Kyle White's jailhouse letter constitutes potential impeachment evidence. The letter is particularly damaging to White's credibility as a witness. Whatever else the letter proves, it clearly establishes that White (1) was willing to lie to avoid prison; (2) was not reluctant to obstruct justice by suborning perjury; and (3) was well aware of the seriousness of the criminal conduct that he was engaging in by seeking to create a perjured defense to his criminal charges.

The United States acknowledges at least constructive possession of the White letter, and does not specifically address the obstruction of justice sentencing enhancement. The United States asserts as defenses to the claim that it has committed a Brady violation: (1) that it did not suppress White's letter because it had no duty to disclose; and (2) that White's letter lacks materiality because it is cumulative impeachment evidence.

    I.      Possession of the Letter and Awareness of the Obstruction Enhancement

"It is settled law that the government has no affirmative obligation to discover potentially exculpatory information which it neither possessed nor of which it was aware." United States v. Dunn, 851 F.2d 1099, 1101 (8th Cir. 1988). That is, "Brady requires the government to disclose to a defendant only evidence that is in the government's possession or that of which the government is aware." United States v. Lacey, 219 F.3d 779, 783 (8th Cir. 2000). "There is, therefore, no Brady violation if the government does not 'possess' the material at issue." United States v. Jones, 34 F.3d 596, 600 (8th Cir. 1994). Information that is subject to the Brady rule includes impeachment evidence pertaining to witnesses for the United States. Giglio v. United States, 405 U.S. 150, 154 (1972).

In its brief, the United States does not contest that it possessed the material at issue. In fact, the United States concedes it possessed Kyle White's letter, at least constructively, prior to trial. This letter was relied upon by another prosecuting Assistant United States Attorney (hereafter "AUSA") in White's criminal case on two occasions: (1) during a detention hearing; and (2) later at White's sentencing. While the government does not specifically address its awareness of White's obstruction of justice sentencing enhancement, it is equally clear that the United States had at least constructive awareness or knowledge of the obstruction enhancement prior to trial. In contrast, it is undisputed that Cvijanovich did not possess White's letter at the time of trial. Nor was Cvijanovich aware of the obstruction of justice sentencing enhancement that White received for the letter attempting to suborn perjured testimony in his own criminal case.

The prosecuting AUSA in Cvijanovich's case contends that he personally did not have actual knowledge of the existence of the letter. This is a distinction without merit. There is no requirement of actual knowledge by a prosecuting AUSA for violation of the Brady rule when the evidence is in the possession of the United States. See United States v. Giglio, 405 U.S. 150 (1972). In Giglio, the Supreme Court held that if an AUSA had promised not to prosecute a witness for cooperating, the United States would be in violation of Brady for failing to disclose that promise, even if the AUSA who tried the case had no knowledge of it:

> In the circumstances shown by this record, neither DiPaola's authority nor his failure to inform his superiors or his associates is controlling. Moreover, whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity and as such it is the spokesman for the Government. A promise made by one attorney must be attributed, for these purposes, to the Government. See Restatement (Second) of Agency s 272. See also American Bar Association, Project on Standards for Criminal Justice, Discovery and Procedure Before Trial s 2.1(d). To the extent this places a burden on the large prosecution offices, procedures and regulations can be established to carry that burden and to insure communication of all relevant information on each case to every lawyer who deals with it.

Giglio, 405 U.S. at 153-154.  The Supreme Court has also plainly stated that: "staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done."  Santobello v. New York, 404 U.S. 257, 262 (1971).

The Court of Appeals for the Eighth Circuit has further observed that different offices of a federal agency "must know what another office of the same agency is doing or has done regarding the accused."  United States v. Barket, 530 F.2d 189, 195 (8th Cir. 1976) (imputing notice to the Justice Department of a loan in dispute as notice to the local federal prosecutor).  Thus under an application of general agency principles, prosecutors can even be held responsible for the knowledge of police officers for purposes of the Brady rule: "[a] prosecutor has a duty to disclose evidence known by police officers, even if not known by the prosecutor, because a prosecutor has a duty to learn of such information."  United States v. Tyndall, 521 F.3d 877, 882 (8th Cir. 2008) (citing Strickler v. Greene, 527 U.S. 263, 280-81 (1999)).  However, the fact that a different office had prosecuted another case might lead to a different result.  United States v. Willis, 277 F.3d 1026, 1034 (8th Cir. 2002) ("Moreover, the office prosecuting [the defendant] was not in charge of the [other] prosecution and was not in possession of non public materials from that case.").

In the case at bar, another AUSA within the same office for the District of North Dakota clearly had actual knowledge of White's letter and the obstruction enhancement.  Under established case law, as members of the same office and a single entity, the prosecuting AUSA in this case is responsible for knowledge of the information relating to White.  Therefore, it is of no legal consequence under a Brady analysis that the AUSAs within the same office failed to communicate about White's letter and obstruction of justice sentencing enhancement.  This fundamental principle in Giglio, that knowledge of one AUSA can be imputed to another prosecutor in the same office, is broad enough that it must cover the situation where one AUSA is aware of soliciting perjured

witness testimony and obstruction of justice and another AUSA is presenting that same witness as the main prosecution in another case. The Court finds that the United States possessed White's letter and was aware of the obstruction of justice sentencing enhancement he received and is thus subject to Brady.

    II.    <u>Failure to Disclose the Letter and Obstruction of Justice Sentencing Enhancement.</u>

Even though knowledge may be imputed to the prosecuting AUSA, there is no Brady violation if the defendant could have obtained the information using reasonable diligence. United States v. Jones, 160 F.3d 473, 479 (8th Cir. 1998) (citations omitted). "When information is readily available to the defendant, it is not Brady material, and the prosecution does not violate Brady by not discovering and disclosing the information." Jones, 34 F.3d at 600 (citations omitted). "Publicly available information which the defendant could have discovered through reasonable diligence cannot be the basis for a Brady violation." United States v. Willis, 277 F.3d 1026, 1034 (8th Cir. 2002). "'The government does not suppress evidence in violation of Brady by failing to disclose evidence to which the defendant had access through other channels.'" United States v. Coplen, 565 F.3d 1094, 1097 (8th Cir. 2009) (quoting United States v. Zuazo, 243 F.3d 428, 431 (8th Cir. 2001)). "'[T]he Government cannot be held to have suppressed Brady material' when the defendant is in 'a position of parity with the government as far as access to this material.'" Jones, 34 F.3d at 600 (quoting United States v. Johnston, 543 F.2d 55, 57 (8th Cir. 1976)).

The United States contends that it had no duty to disclose the information because it was readily available to Cvijanovich through reasonable diligence, relying on Reese v. Frey, 801 F.2d 348, 350 (8th Cir. 1986). In Reese, the court held that a court file in which an arrest warrant was discovered was readily available to the defendant and not covered by the Brady doctrine. The United States argues that since White's letter was in a court file the information was readily

8

available and there is no Brady violation. Essentially, the United States contends that attaching the letter to a clerk's minutes entry in a public court file renders the information about White "readily available" to the defendant and discoverable by defense counsel through reasonable diligence.

At the outset, the Court would note that claims arising out of the Due Process Clause have rarely been the subject of bright-line tests. Usually the questions are fact specific–driven by a simple question "was the process sufficient to satisfy the requirements of the United States Constitution." In the case of the failure to disclose Brady material, the harm to be avoided is the injustice of being convicted without access to exculpatory evidence in the government's possession and control. As the Court in Brady noted:

> Society wins not only when the guilty are convicted, but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: "The United States wins its point whenever justice is done its citizens in the courts."

Brady v. Maryland, 373 U.S. at 87. The issue then is not so much whether or not the defendant is guilty of the crime, but whether or not he has been treated unfairly in such a manner that it is reasonably probable that the outcome of the proceeding would have been different had the information been made available to the finder of fact.

Even though White's court file was available to the public, it is simply not accurate to describe the information as being "readily available." Nor can the importance of the information be readily understood by a reasonable examination of the court's docket relating to White's unrelated prosecution. White's letter can only be found attached as a second exhibit to the clerk's minutes entry for a hearing on a motion for reconsideration for release (White Doc. #25-3). To further complicate the issue, the entry is also referred to as a bond hearing (Id.). There is no

9

indication of the nature of the letter in the docket text, or in the clerk's minutes (White Doc. #25). Rather, the clerk's minutes simply describe the exhibit as "Handwritten letter by Defendant directed to inmate Derrick" (Id.). There is no transcript available for this hearing. In short there is simply no meaningful indication at this docket entry that White had engaged in an attempt to obstruct justice by suborning a perjured defense.

The minutes entry for White's change of plea hearing contains an equally vague reference about "some uncharged conduct during the pendency of this case & Govt will not be bringing additional charges for Obstruction of Justice" (White Doc. #31). The notes further reflect that the issue will be brought up at sentencing and the defendant will be objecting (Id.). There is no written plea agreement (Id.). The minutes entry for White's sentencing hearing merely states that "Attorney Arnason comments as to the obstruction of justice, and paragraph 31 of PSIR - Government comments," and includes in the guideline calculations, "2 upward (obstruction of justice)" (White Doc. #44).

While the Presentence Investigation Report prepared by the United States Probation and Pretrial Services Officer provides a clear explanation of the obstruction of justice, it is not part of the public court file. Although PSIRs are generally confidential, the government must disclose information in them pursuant to Brady. United States v. Shafer, 608 F.3d 1056, 1066 (8th Cir. 2010). The PSIR makes plain that the basis for the obstruction of justice adjustment to White's sentence was his attempt to obtain a perjured defense to the charges and that the evidence of this was the letter to Derrick. This information in the PSIR is necessary to connect White's letter with the obstruction of justice sentencing enhancement, but it is not readily available when the public court file is examined.

A reasonably competent lawyer appointed from the CJA panel might well have looked at the docket for United States v. Kyle Christopher White, 2:06-cr-00080, but that review would not have revealed the extent or the egregious nature of Kyle White's conduct. It is important to note that in these very difficult budget times, the court reviews claims for payment on CJA vouchers very closely-and there is simply no conceivable way that the undersigned judge, or any of his colleagues on the District Bench in the District of North Dakota would pay for lawyers to read every entry in an unrelated case file. The fact that the Defendant's obsessive nature led him to discover the proverbial "needle in a haystack" does not render the needle "readily available" or "equally accessible" to the defense.

Compare this to the actual knowledge that existed in the office of the United States Attorney that related to White. The criminal section of the office is relatively small–and in Fargo amounts to the equivalent of a small law firm. The lawyers routinely provide back-up support and often share support staff. It is rather unlikely that something as salacious as the interception of a note actually laying out an attempt to fabricate a defense and directing the recipient to "flush" the note didn't create at least some "buzz" in the office. While it is plain that the information never arrived in the hands of the prosecuting AUSA, it seems equally plain that the information was more accessible to the prosecution than the defense. The court is absolutely convinced that had the prosecuting AUSA been aware of White's activities he would have provided the information to the defense. The cooperation between the United States and the defense bar in this district has long been extraordinary, with the most common complaint being that the government provides too much information. Thus, any notion that the failure to produce the information is the result of nefarious conduct is simply incredible. Nonetheless, the evidence at bar is compelling and could not have been readily available to Cvijanovich prior to trial.

When these facts are compared to Reese, it becomes clear that neither the letter nor the nature of the scheme to obstruct justice would have been readily available or accessible to defendant's counsel upon any sort of review of the docket that the Court would have authorized payment for under the CJA act.[1]  This is not a case where a witness's other state court convictions were accessible to defense counsel as a public record.  Jones, 34 F.3d at 600.  Indeed, defense lawyers have a duty to conduct a reasonable investigation or make a reasonable determination that an investigation is unnecessary and the failure to do so may be ineffective assistance of counsel. Worthington v. Roper, 631 F.3d 487, 500 (8th Cir. 2011); Strickland v. Washington, 466 U.S. 668, 691 (1984).  White's letter and the obstruction of justice information were not a matter of public record such as an injunction that could have been discovered merely by entering an entity's name into a legal database as the Court of Appeals observed in United States v. Willis, 277 F.3d 1026, 1034 (8th Cir. 2002).  This information was not "widely disseminated and equally accessible to the defense," such as a videotape broadcast by a television station and seen by many people in Liggins v. Burger, 422 F.3d 642, 655 (8th Cir. 2005).  It also is not a situation where the information was unavailable to either party.  United States v. Johnston, 543 F.2d 55, 57 (8th Cir. 1976) (when the prosecution disclosed the name of the testing officer for material that had been lost by state police officials, the defendant was in a "position of parity" with equal access as the government). Moreover, no transcripts were ever prepared in White's case.  Therefore, this case is also distinguishable from United States v. Jones, 160 F.3d 473, 479 (8th Cir. 1998), which found no suppression where federal court transcripts were readily available to the defendant, and United

---

[1] The Court would be remiss if it did not note that Benjamin Thomas, the CJA Panel lawyer handling Cvijanovich's defense, is an experienced and able attorney with over 20 years experience handling criminal cases. He is an exceptionally thorough and capable lawyer, and the court agrees with Cvijanovich's assertion that his failure to find the information does not constitute a lack of diligence.

States v. Albanese, 195 F.3d 389, 393 (8th Cir. 1999), where there was no Brady violation for failure to disclose a transcript of a witness's prior inconsistent testimony as the transcript was in the public record. See also United States v. Ladoucer, 573 F.3d 628, 636 (8th Cir. 2009) (the defendant could have obtained a copy of a state court transcript himself, which was as available to him as to the government); United States v. Coplen, 565 F.3d 1094, 1097 (8th Cir. 2009) (the testimony of witnesses in a prior related trial was a matter of public record, information about them was provided in a discovery inventory, and it was not material).

In the case at bar, the United States concedes possession of White's letter and does not deny knowledge of the sentencing enhancement for obstruction of justice. Though the prosecuting AUSA did not have actual knowledge of the information, another AUSA within the same district and office used White's letter to support continued pre-trial detention and to support an obstruction of justice sentencing enhancement. The imputation of this knowledge to the AUSA prosecuting Cvijanovich is not unusual or unfair. See Giglio, 405 U.S. at 153-154. What would be unusual would be to describe this information as equally available to the defense. This was not a case where the parties had equal access to a state court conviction or the material had been lost, rather this is a situation where the United States had information relating to its key witness–information that the witness was not above obstructing justice and suborning perjury–and used that evidence to the key witness's detriment in a prosecution against him, while the current case was pending and failed to inform the defense of the situation. To compound the matter, the court's minutes and docket sheet was simply too cryptic to appraise a diligent lawyer of these problems. Under these facts, Cvijanovich clearly was not in a position of parity to the government and defense counsel did not share equal access as the prosecutor to this information.

Finally, the United States raises the fact that Cvijanovich himself discovered the letter. In essence, the United States posits that Cvijanovich's discovery of White's letter demonstrates the evidence could have been discovered before trial through reasonable diligence. At first blush, this argument appears persuasive. See Jones, (1994) 34 F.3d at 600 ("Moreover, the information about [a witness]'s criminal record was first revealed through the investigation made by [a co-defendant]'s counsel. This suggests that this information also was accessible to [the defendant]'s attorney."). Cvijanovich discovered the information about White, while his counsel did not. Cvijanovich explains why in his Reply (Doc. #165). He notes that defense counsel would not find this information through reasonable diligence, and refers to examining White's docket sheet entries as a fishing expedition (which Cvijanovich presumably did). This is consistent with the Court's previous observation that "[a]t trial, Cvijanovich aggressively challenged the credibility of White's testimony through cross-examination and closing arguments, and he has continued to attack White's credibility since his conviction, both in post-trial motions and on appeal" (Doc. #124, "Order Denying Motion for New Trial"). More importantly, the Court has had ample opportunity to observe Cvijanovich for over half a decade now; he is an exceptionally bright person with a readily observable obsessive personality. Cvijanovich frequently obsesses on past events and perceived wrongs inflicted on him. He was particularly incensed by the fact that the jury believed White, who always appeared to Cvijanovich to be easily the least credible witness who testified against him. Under these circumstances the Court is not surprised that he discovered this information when his lawyer did not. The implication by the United States that Cvijanovich's discovery of the matter establishes that it was discoverable through reasonable diligence does not change the view of the Court for the reasons discussed above that this information was not readily available to Cvijanovich-

even if it was eventually available to him through sheer persistence. The Court is of the opinion that the information was turned up by Cvijanovich as a result of his unnatural intelligence and his even more unusual obsession.

        III.        <u>Materiality of White's Letter and Obstruction of Justice Sentencing Enhancement</u>

"To establish materiality in the context of <u>Brady</u>, 'the accused must show there is a reasonable probability that if the allegedly suppressed evidence had been disclosed at trial the result of the proceeding would have been different.'" <u>Mandacina v. United States</u>, 328 F.3d 995, 1001 (8th Cir. 2003) (quoting <u>Drew v. United States</u>, 46 F.3d 823, 828 (8th Cir. 1995)). "'A "reasonable probability" is a probability sufficient to undermine the reviewing court's confidence in the outcome of the proceeding.'" <u>Id.</u> The standard for materiality is "neither under a sufficiency of the evidence test nor by the mere possibility that it might have influenced the jury, but rather by how the government's case would have looked had the defense had access to the undisclosed information." <u>United States v. Haskell</u>, 468 F.3d 1064, 1075 (8th Cir. 2006) (citing <u>United States v. Carman</u>, 314 F.3d 321, 324 (8th Cir. 2002)). If the evidence that was suppressed is cumulative of evidence already available to the defendant, then there is no <u>Brady</u> violation. <u>United States v. Zuazo</u>, 243 F.3d 428, 431 (8th Cir. 2001) (citing <u>United States v. Quintanilla</u>, 25 F.3d 694, 699 (8th Cir. 1994)).

The United States claims the information at issue is no different than information in Cvijanovich's earlier motion for a new trial based upon newly discovered evidence. His motion for a new trial under Rule 33 was based on a post-trial letter from White to the Court after testifying at Cvijanovich's trial (Doc. #121). White's post-trial letter was construed as a Rule 35 motion to reduce sentence by White (White Doc. #56), and denied by the Court (White Doc. #57). The Court also denied Cvijanovich's motion for a new trial (Doc. #124). The post-trial letter demonstrated at

15

most that White lied about using drugs, and similar evidence had already been offered at trial (Id.). Cvijanovich's motion failed to meet the requirements that the evidence be more than merely cumulative or impeaching, and that the evidence be likely to produce an acquittal in a new trial. See States v. Swayze, 378 F.3d 834, 837 (8th Cir. 2004). Ultimately Cvijanovich could not satisfy the rigorous standard for granting a new trial on the disfavored grounds of newly discovered evidence. See United States v. Hollow Horn, 523 F.3d 882, 889 (8th Cir. 2008).

In contrast, the Brady materiality standard of a reasonable probability sufficient to undermine confidence in the outcome is a lower standard than the likely to produce an acquittal standard. See Mandacina, 328 F.3d at 1001. The Brady rule also clearly includes impeaching information as exculpatory evidence, which can be material if it is more than cumulative. If a witness's reliability may determine guilt or innocence, the impeachment information falls within the Brady rule. Giglio, 405 U.S. at 154. In Giglio, the case "depended almost entirely" on the witness's testimony as "without it there could have been no indictment and no evidence to carry the case to the jury." Id. Similarly, the only count Cvijanovich was convicted on was Threats Against the President allegedly transmitted to Kyle White by Cvijanovich. He was acquitted at trial on the other two Counts of the Indictment. White was the only witness to this conversation. No one else testified that they overheard it. Thus this case is also comparable to Reutter v. Solem, 888 F.2d 578 (8th Cir. 1989). In Reutter, the court rejected the government's argument that information was not material because the defendant had already attacked the witness's credibility as a convicted felon, reasoning that the impeachment information was material because the case depended almost entirely on that witness's credibility. Id. at 581. When a single witness is the primary basis and only direct evidence for convicting the defendant, the cumulative effect of impeaching evidence can be extremely powerful.

16

This is even more true when the impeachment evidence, like that present here, demonstrates that the witness is willing to lie, obstruct justice, and build a perjured defense in order to shorten or avoid prison. The evidence present in this motion-the letter, the scheme to obstruct justice, and White's knowledge that the conduct he was engaging in was criminal-all lead to an inescapable conclusion that the failure to produce the evidence undermines confidence in the outcome of the proceedings.

The United States correctly notes that a significant amount of impeachment material was raised at trial. Thus it contends that this letter and obstruction of justice information about White is cumulative at best. However, in making its materiality determination the Court must consider how the government's case would have looked had the defense had access to the undisclosed information. Haskell, 468 F.3d at 1075. In addition, "the fact that other impeachment evidence was available to defense counsel does not render additional impeachment evidence immaterial." United States v. O'Conner, 64 F.3d 355, 359 (8th Cir. 1995) (concluding that the additional impeachment information "could have tipped the balance and caused the jury to disbelieve" the witnesses who provided the only information on certain counts, and thus reversing and remanding on those charges). Although new evidence after trial that White may have lied about being a drug user was not material, the nature of his letter soliciting perjury is much different. For instance, on direct examination, the AUSA asked White: "What do you think would happen to you if you were lying to the Court today?" Trial Tr., Vol. II, at 129. White answered: "I'd get prosecuted and basically get charged with some other charge and, you know, go back to prison or stay in prison." Id. If White's letter soliciting perjury and obstruction of justice sentencing enhancement had been disclosed, defense counsel could have directly attacked this statement and others. The United States also downplayed White's criminal history, contending that White "lied to a police officer because

17

he was 20 years old and was drinking and he didn't want to go to jail. Does that amount to such serious lies that you think he can't possibly be telling the truth now?" Trial Tr., Vol. III, at 90. The prosecutor added that White lied about being in jail for assaulting his son because he did not want to get beat up in jail, and that he was not getting any benefit. Id. The United States also argued that "wanting to get out of jail doesn't make him a liar." Id. at 89.

Defense counsel argued in closing that White admitted giving false information to law enforcement to avoid jail, and suggested that his sole motivation for testifying at trial was also to get out of jail. Trial Tr., Vol. III, at 64. This argument would be much more powerful if defense counsel had known that White also wrote a letter soliciting false testimony in his own criminal case, and that he was found culpable of obstruction of justice for a sentencing enhancement. These circumstances are again similar to Reutter, wherein:

> The materiality of the non-disclosed information becomes even more apparent in light of the prosecutor's closing remarks, which capitalized on defense counsel's ignorance by arguing to the jury that [the witness] had no possible reason to be untruthful in his testimony because he had "nothing that he could gain" from cooperating with the state.

888 F.2d at 582. Because a commutation hearing for the witness in Reutter had been rescheduled for shortly after trial, "the prosecutor's misleading closing statements merely serve further to undermine our confidence in the outcome of the trial." Id. (finding that suppressed evidence of the witness's petition for commutation and upcoming hearing established a reasonable probability the result of the trial would have been different). Similarly, the statements by the government about White in Cvijanovich's trial that also capitalize on defense counsel's ignorance of White's letter and obstruction of justice sentencing enhancement reaffirm the materiality of White's letter and obstruction of justice sentencing enhancement as creating a reasonable probability sufficient to undermine confidence in the outcome.

**DECISION**

Having established that the United States (1) suppressed evidence (2) that was favorable to the defendant, and (3) that was material to guilt, the Court finds that Cvijanovich has met his burden of demonstrating a Brady/Giglio violation. The federal habeas corpus statute provides that when a federal court finds that a judgment was rendered without jurisdiction or is legally infirm, "the court should vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255. The appropriate remedy for a Brady/Giglio violation is to vacate the conviction and order a new trial. United States v. Garcia, 562 F.3d 947, 953 (8th Cir. 2009). Accordingly, Petitioner Daniel Edward Cvijanovich's motion to vacate, set aside, or correct sentence is **HEREBY GRANTED**. **IT IS HEREBY ORDERED** that Cvijanovich's conviction on Count One of the Indictment is **VACATED** and a new trial be scheduled.

**IT IS SO ORDERED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 8th day of July, 2011.

                                                               /s/ Ralph R. Erickson
                                                               Ralph R. Erickson, Chief Judge
                                                               United States District Court